# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-1041

_____

| | | |
|---|---|---|
| Corelanius T. Phillips, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Larry Norris, Director, Arkansas | * | Appeal from the United States |
| Department of Correction; Robert | * | District Court for the Eastern |
| Clark, Disciplinary Hearing | * | District of Arkansas. |
| Administrator, Arkansas Department | * | |
| of Correction; Marvin Evans, Jr., | * | |
| Warden, East Arkansas Regional Unit, | * | |
| ADC; Freddie Walls, Assistant | * | |
| Warden, East Arkansas Regional Unit, | * | |
| ADC; C. Kelley, East Arkansas | * | |
| Regional Unit, ADC; J. Mathis, | * | |
| Disciplinary Notification Officer, East | * | |
| Arkansas Regional Unit, ADC, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 5, 2002

Filed:  February 27, 2003

_____

Before HANSEN, Chief Judge, BEAM and RILEY, Circuit Judges.

_____

BEAM, Circuit Judge.

Corelanius T. Phillips ("Phillips") appeals the magistrate judge's[1] grant of summary judgment in favor of appellees Larry Norris, et al., in this 42 U.S.C. § 1983 case. We affirm.

## I.    BACKGROUND

The facts are undisputed. Phillips is an inmate currently confined at the East Arkansas Regional Unit of the Arkansas Department of Correction ("ADC"). On June 11, 2000, Phillips was caught carrying tobacco, rolling papers and lighters by an ADC employee. Because of this, Phillips was placed on Disciplinary Court Review ("DCR") status and transferred from the Max 7 Barracks (general population) to the Max 4 Barracks (isolation), with the approval of appellee C. Kelley ("Kelley"). Phillips was initially charged with a disciplinary violation based on the possession of contraband, but the charge later disappeared. Phillips complained to appellees J. Mathis ("Mathis") and Kelley about his transfer, status and lack of hearing on the contraband charges, but neither Mathis nor Kelley was authorized to change his status or housing assignment. While Phillips was incarcerated in the Max 4 Barracks, he lost the privileges of contact visitations, yard and gym call, and chapel. On July 17, 2000, Phillips refused to return to his barracks and was charged with another disciplinary violation. He received a hearing, was found guilty, was reduced in class and lost good time. Phillips was released from isolation on July 25, 2000.

Phillips filed this action pursuant to 42 U.S.C. § 1983, alleging constitutional violations. The magistrate judge granted appellees' motion for summary judgment, finding that Phillips's due process, Eighth Amendment and equal protection rights

---

[1]The Honorable H. David Young, United States Magistrate Judge for the Eastern District of Arkansas. The parties consented to trial before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), with direct review to this court.

were not violated.  Phillips appeals, arguing that the denial of a hearing to respond to the alleged violation of prison rules and the resulting thirty-seven days on DCR status (1) violated his due process rights because of atypical hardships endured, (2) violated his Eighth Amendment right to be free from cruel and unusual punishment, and (3) violated his equal protection rights under the Fourteenth Amendment.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo.  Hughes v. 3M Retiree Med. Plan, 281 F.3d 786, 789 (8th Cir. 2002).

Phillips argues that his due process rights were violated by disciplinary confinement without a hearing.   He argues that his liberty interests were infringed because he was not given the opportunity to be heard concerning the alleged infraction and that this failure to provide a hearing constituted an "atypical and significant hardship" in relationship to the "ordinary incidents of prison life," as recognized by Sandin v. Conner, 515 U.S. 472, 484 (1995).

In order to prevail on a Fourteenth Amendment due process claim, Phillips must first demonstrate that he was deprived of life, liberty or property by government action.  Singleton v. Cecil, 155 F.3d 983, 987 (8th Cir. 1998); Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997).  There is no question that Phillips was not deprived of life or property.  Thus he must identify a liberty interest in order to sustain his due process claim.  The Supreme Court laid out the test for determining liberty interests in a prison setting in Sandin, 515 U.S. at 483-84.

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. (citations omitted).

In this context, there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations. Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996). Rather, any liberty interest must be an interest in the nature of the prisoner's confinement, "not an interest in the procedures by which the state believes it can best determine how he should be confined." Id. Thus, Phillips is incorrect in asserting that the denial of a hearing should be considered when determining whether a liberty interest was affected. In order to determine whether an inmate possesses a liberty interest, we compare the conditions to which the inmate was exposed in segregation with those he or she could "expect to experience as an ordinary incident of prison life." Beverati, 120 F.3d at 503. We do not consider the procedures used to confine the inmate in segregation. Kennedy, 100 F.3d at 643.

We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship. Id. at 642. Thus, in order for Phillips to assert a liberty interest, he must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship. He asserts three: (1) no contact visitation, (2) no exercise privileges, and (3) no chapel rights.

A prisoner does not have a liberty interest in contact visitation. Bazzetta v. McGinnis, 124 F.3d 774, 779 (6th Cir. 1997); see Thorne v. Jones, 765 F.2d 1270, 1274 (5th Cir. 1985). There is no indication that Phillips was denied non-contact visitation, thus the issues in Bazzetta v. McGinnis, 286 F.3d 311 (6th Cir. 2002), cert. granted, Overton v. Bazzetta, 123 S. Ct. 658 (Dec. 2, 2002) are not implicated.

-4-

A prisoner may have a liberty interest in some access to exercise, but we have never set a time limit on how often prisoners must be allowed to exercise. Here, Phillips was denied exercise privileges for thirty-seven days. While thirty-seven days is perhaps pushing the outer limits of acceptable restriction, we find that it did not constitute an atypical and significant hardship for Phillips in the context of normal prison life.

Limitations on religious services, especially for a short period of time, have also been found not to present an atypical and significant hardship. See Beverati, 120 F.3d at 504. Phillips was not prevented from exercising his religion within his cell, thus he was not subjected to an atypical and significant hardship. Additionally, he was only denied religious services for thirty-seven days. This is not an atypical and significant hardship that Phillips could not have anticipated upon his incarceration. Thus, no due process violation occurred.

Phillips also argues that the denial of a hearing violated his Eighth Amendment rights. To sustain this claim, Phillips needs to show "unnecessary and wanton infliction of pain," as well as a deprivation "denying the minimal civilized measure of life's necessities." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotations omitted). Phillips must also show that the defendants were deliberately indifferent to his health or safety, Farmer v. Brennan, 511 U.S. 825, 828 (1994), and that they acted maliciously for the purpose of causing him harm, Whitley v. Albers, 475 U.S. 312, 320-21 (1986). We agree with the district court that Phillips has fallen far short of sustaining this burden of proof.

It is irrelevant to our Eighth Amendment analysis whether a hearing was held before conditions were imposed. Ricker v. Leapley, 25 F.3d 1406, 1411 (8th Cir. 1994). The Eighth Amendment only requires that we look at the specific conditions to ensure that they were not cruel and unusual. We have ruled that conditions equal to, and even worse than, Phillips's conditions did not violate an inmate's Eighth

Amendment rights. O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 83-84 (8th Cir. 1996) (several days without underwear, blankets, mattress, exercise or visits not in violation of Eighth Amendment); Williams v. Delo, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothes, mattress, water, bedding, legal mail or hygienic supplies not in violation of Eighth Amendment).

In Pearson v. Ramos, 237 F.3d 881, 884 (7th Cir. 2001), the Seventh Circuit upheld a "90-day threshold for considering a denial of out-of-cell exercise opportunities a possible violation of the cruel and unusual punishments clause." While there may be some time less than ninety days that violates the Eighth Amendment, we do not think that the thirty-seven day period in this instance does so.

Additionally, we find that thirty-seven days without contact visitation or religious services do not violate the Eighth Amendment because these conditions do not inflict unnecessary or wanton inflictions of pain, nor do they involve "life's necessities," such as water, food or shelter. Phillips has failed to establish an Eighth Amendment violation.

Phillips also alleges that the prison officials violated his equal protection rights. Because Phillips does not allege he was a member of a protected class or that a fundamental right was violated, he must show that "similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998). He also must show intentional or purposeful discrimination. Klinger v. Dep't of Corr., 31 F.3d 727, 733 (8th Cir. 1994). The existence of prison regulations is not enough to meet this burden and Phillips has not proven disparate treatment, the absence of a rational relationship to any legitimate penal interest, or intentional discrimination. Thus, his equal protection claim fails.

## III.  CONCLUSION

For the reasons stated above, we affirm the magistrate judge's decision.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.